OMNIPOINT COMMUNICATIONS ENTERPRISES, L.P.

v.

WARRINGTON TOWNSHIP.

No. 98–6684.

United States District Court,
E.D. Pennsylvania.

Sept. 21, 1999.

Edward M. Wild, Benner & Wild, Doylestown, PA, for Plaintiff.

George H. Knoell, Kane, Pugh, Knoell & Driscoll, Norristown, PA, for Defendant.

## MEMORANDUM

DALZELL, District Judge.

This is another action under the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* (hereinafter "TCA"), prompted by the explosive growth of cell phone demand and its attendant need for the telecommunications towers that dot the landscape.

Currently before us are the parties' cross-motions for summary judgment. For the reasons that follow, we will grant defendant's motion and deny plaintiff's motion.

## I. *Facts*

On April 28, 1998, the Board of Supervisors of defendant Warrington Township ("Warrington") enacted Ordinance No. 98–0–10. Section I(5)(d)(u) of the Ordinance provides that:

> The Applicant [proposing to construct a new communications tower] shall demonstrate that it is utilizing "stealth" technology to the greatest extent possible in the design of a Communications Tower.

In July of 1998, plaintiff Omnipoint Communications Enterprises, L.P. ("Omnipoint") applied to Warrington's Board of Supervisors for authorization to construct a one-hundred-and-fifty-foot monopole communications tower on property located at 305 Lower State Road in Warrington Township.[1] The Board held hearings on Omnipoint's application on September 8, 1998, October 13, 1998, and October 27, 1998, and, on November 25, 1998, approved Omnipoint's application and attached seven conditions to it, one of them being that the tower "be designed utilizing stealth technology to look like a tree" (hereinafter the "tree condition"). *See* Compl. Exh. B. Four weeks later, Omnipoint filed this action, arguing that Warrington's imposition of the tree condition violated the TCA, 42 U.S.C. § 1983, and Pennsylvania law. Both parties have moved for summary judgment.[2]

## II. *The TCA*

The TCA became law on February 8, 1996. Its purpose is to "reduce regulation and encourage the rapid deployment of new telecommunications technologies." *Reno v. ACLU,* 521 U.S. 844, 117 S.Ct. 2329, 2337–38, 138 L.Ed.2d 874 (1997) (internal quotation omitted). Local zoning authorities, however, retain much of their power under the TCA. 47 U.S.C. § 332(c)(7)(A) provides that:

> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

Omnipoint argues that Warrington's imposition of the tree condition violates the

---

1. Omnipoint was required under the Ordinance to obtain conditional use approval from the Board of Supervisors for its communications tower.

2. Under Fed.R.Civ.P. 56(c), a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of proving that there is no genuine issue of material fact in dispute, *see Matsushi-ta Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and we view all evidence in the light most favorable to the nonmoving party, *see id.* at 587, 106 S.Ct. 1348. When responding to a motion for summary judgment, the nonmoving party "must come forward with specific facts showing there is a genuine issue for trial." *Id.; see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial).

TCA because it "ha[s] the effect of prohibiting the provision of personal wireless services," in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), and "unreasonably discriminate[s] among providers of functionally equivalent services," in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I). We reject both arguments.

### A. The Tree Condition Does Not Prohibit *the Provision of Personal Wireless Services*

Omnipoint asserts that, even though Warrington *granted* its conditional use application, the tree condition so increased the cost of the communications tower that it had the effect of prohibiting Omnipoint's provision of wireless communication services in Warrington Township, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). We disagree.

■ We first note that a number of courts have held that this provision of the TCA applies only to blanket prohibitions or general bans or policies, not to individual zoning decisions. *See, e.g., AT & T Wireless PCS, Inc. v. City Council of Virginia Beach,* 155 F.3d 423, 428 (4th Cir. 1998) (holding that "any reading of subsection (B)(i)(II) that allows the subsection to apply to individual decisions would effectively nullify local authority by mandating approval of all (or nearly all) applications, a result contrary to the explicit language of section (B)(iii), which manifestly contemplates the ability of local authorities to 'deny a request' "); *Omnipoint Comms., Inc. v. City of Scranton,* 36 F.Supp.2d 222, 232 (M.D.Pa.1999) ("It is well-settled ... that a single decision by a local regulatory agency is insufficient to demonstrate a prohibition on personal wireless communi-

cation services. The courts have uniformly held that § 3[3]2(c)(7)(B)(i)(II) is violated only where the local regulatory agency creates a general ban against all personal wireless communication services."). Under this reasoning, Omnipoint may not prevail on its § (B)(i)(II) claim, because Warrington's decision on its conditional use application cannot fairly be regarded as a "blanket ban or policy."

Even if we were to construe Omnipoint's argument as an attack on the ordinance as a blanket prohibition, however, the ordinance still does not violate § (B)(i)(II). Because "tree towers" currently are in use in locations along the Pennsylvania Turnpike and in Blue Bell, Pennsylvania,[3] the tree condition cannot, by hypothesis, have the real world effect of prohibiting the provision of wireless services.

■ Omnipoint argues that Warrington's approval of its application with the attachment of "onerous, arbitrary conditions" is "tantamount to a denial." Pl.'s Resp. at 5. While it may be the case that the imposition of certain conditions that result in *extreme* financial hardships might "have the effect" of prohibiting the provision of wireless services, that simply is not the case here. The unrebutted affidavit of John W. Sieber, P.E., states that the total cost for the site (without the tree tower) may be as much as $444,475, rather than Omnipoint's initial estimate of $134,000. *See* Sieber Aff. at ¶¶ 3–5. The parties agree that the tree condition adds $150,000 to that base figure. Thus, in contrast to Omnipoint's contention that the tree condition more than doubled the cost of the project, in reality it imposes an additional cost that is only about one-third the cost of the entire project.[4] Furthermore, it is

---

**3.** *See* Stipulated Record (hereinafter "S.R.") at 210 (deposition of Robert Pellegrino, former Warrington Township Manager); *id.* at 350–51, 106 S.Ct. 2548 (photographs of tree towers along the Pennsylvania Turnpike). See also *Cellular Tel. Co. v. Board of Adjustment of Paramus,* 37 F.Supp.2d 638, 648 (D.N.J.1999), a case in which the cellular phone company actually *offered* to disguise its

communications tower as a tree "in order to almost completely negate any adverse visual impact."

**4.** Even if Omnipoint's initial estimate of $134,000 had been correct, we still would have rejected the argument that the "onerous" tree condition violated the TCA. The tree condition is merely a cost of doing business.

possible to co-locate the communications antennae of different cell phone providers on the same tower, giving Omnipoint another potential source of income or cost-sharing (apart from any increase in revenue it may realize as a result of improving its services in Warrington Township).

We therefore reject Omnipoint's argument that the condition is unlawfully "onerous." While in the abstract $150,000 is a significant sum, for a company of Omnipoint's size[5] there is no basis here to conclude that this expenditure would impair the company's commercial viability. Its self-serving statement that it "will not" build a site with a tree condition attached, see Pl.'s Br. at 11, is insufficient to demonstrate that the tree condition effectively prohibited Omnipoint's provision of wireless services.

■ We also reject Omnipoint's contention that the "arbitrariness" of the condition renders it violative of the TCA. The TCA is clear: local governments retain their authority to regulate the placement and construction of personal wireless service facilities, provided that they do not prohibit the provision of personal wireless services. We find that decisions about the appearance of communication towers are at the heart of the authority the TCA specifically reserved for state and local governments. To hold otherwise would be to determine that cellular phone companies may largely override all of the legitimate powers of local zoning boards, a result Congress did not contemplate when it drafted the TCA.

We therefore hold that Warrington has not violated 47 U.S.C. § 332(c)(7)(B)(i)(II).

B. Warrington Did Not Unreasonably Discriminate Among Providers of Functionally Equivalent Services

47 U.S.C. § 332(c)(7)(B)(i) provides that:

The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof-

(i) shall not unreasonably discriminate among providers of functionally equivalent services.

■ In Sprint Spectrum, L.P. v. Jefferson County, 968 F.Supp. 1457, 1467–68 (N.D.Ala.1997), the court held that the inquiry into the reasonableness of governmental action "focuses on whether a legitimate basis for the contested action is presented" (internal quotation omitted). See also Omnipoint Comms. Enters., L.P. v. Newtown Township, 1999 WL 269936, at *2 (E.D.Pa. Apr.29, 1999) ("In order to prove unreasonable discrimination under the Telecommunications Act, a plaintiff must demonstrate both unequal treatment and that there was no basis for the unequal treatment.").

■ Omnipoint argues that Warrington violated this provision of the TCA because it only imposed the tree condition on Omnipoint, not on any of the other communications providers in Warrington Township. All of the instances Omnipoint cites in support of its argument, however, are readily distinguishable from Omnipoint's case.

Omnipoint was the first and, so far as the record shows, the only communications provider to apply for conditional use approval under Warrington's new ordinance. See Pellegrino Dep. at 14–15, 22. Omnipoint argues that on March 18, 1999, Warrington issued a conditional use approval to Nextel Communications of the Mid–Atlantic, Inc., ("Nextel") that did not contain a tree condition. However, Nextel

5. Omnipoint's parent, a publicly held company, at the close of NASDAQ trading on September 20, 1999 had a market capitalization of $3,615,730,000, up 12.4 times over the past fifty-two weeks. See Omnipoint Corp. SEC Form 10–Q balance sheet, available in LEXIS, Company Library, SEC File (53,418,841 shares issued and outstanding as of June 30, 1999) and The Wall Street Journal, Sept. 21, 1999, at C12 (52–week high and low of 57⁵⁄₁₆, yesterday's close, and 4⅞).

was not seeking to erect a new communications tower, but merely wanted to place an antenna on an already-existing tower and erect a communications equipment building.[6] See S.R. at 352–54 (Warrington's decision on Nextel's application for conditional use approval). Nextel's case is thus far removed from Omnipoint's.

Omnipoint also contends that Warrington issued a building permit to AT & T Wireless Services on June 11, 1998 that did not require "stealth" technology. Again, however, AT & T did not seek to erect a new tower, but instead wanted to replace an existing PECO power transmission structure with a communications structure that would "match the existing structures in PECO corridor." S.R. at 372.[7] Like Nextel's case, AT & T's situation differs materially from Omnipoint's.

Omnipoint thus has failed to adduce any evidence in support of its contention that Warrington unreasonably discriminated against providers of functionally equivalent services. We therefore will grant summary judgment in favor of Warrington on Count I of Omnipoint's complaint.[8]

### III. Omnipoint's Claim Under 42 U.S.C. § 1983

Because we find that Warrington did not violate the TCA, we will grant summary judgment in Warrington's favor on Omnipoint's § 1983 claim, as there has been no deprivation of any right, privilege, or immunity "secured by the Constitution [or] laws" to Omnipoint.

### IV. Omnipoint's State Law Appeal

Finally, in Count III of its complaint, Omnipoint sets forth a claim under unspecified Pennsylvania law. Under 28 U.S.C. § 1367(c)(3), we may decline to exercise supplemental jurisdiction over state law claims if we have "dismissed all claim over which [we] ha[d] original jurisdiction." See also United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a pre- § 1367 case in which the Supreme Court held that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."

Because we find that the Pennsylvania courts are the more appropriate forum for Omnipoint's state law appeal, we will decline to exercise supplemental jurisdiction over Count III of Omnipoint's complaint.

### Conclusion

While reasonable people may question Warrington's decision on purely aesthetic grounds, see, e.g., S.R. at 350–51 (photographs of tree towers along the Pennsylvania Turnpike), we hold that the Township did not violate the TCA by making that decision. We therefore grant summary judgment in Warrington's favor on Counts I and II of Omnipoint's complaint and dismiss Count III without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

---

6. According to Warrington's Zoning Ordinance, a "communications equipment building" is "[a]n unmanned Building or cabinet containing communications equipment required for the operation of Communications Antennas and covering an area on the ground not greater than 250 square feet."

7. Interestingly, AT & T never sought conditional use approval for its replacement of the PECO tower. On August 12, 1998, Warrington sent AT & T a zoning enforcement notice advising it that communications antennae were not allowed in the tower's zoning district and directing AT & T to remove its equipment. See S.R. at 371–72. Thus, Omnipoint's argument fails on two fronts: AT & T's case is distinguishable because it sought only to modify an existing tower, and Warrington's zoning board never granted AT & T conditional use approval and therefore could not have treated Omnipoint differently from AT & T. See S.R. at 297–98.

8. Omnipoint also raises the argument that Warrington's decision was not based on substantial evidence contained in a written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii). However, a review of that provision of the TCA reveals that it applies only to denials of applications. Because Warrington did not deny Omnipoint's application, but merely attached a condition to it, this provision does not apply.

*ORDER*

AND NOW, this 20th day of September, 1999, upon consideration of the parties' cross-motions for summary judgment, and the responses thereto, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is DENIED;

2. Defendants' motion for summary judgment is GRANTED;

3. JUDGMENT IS ENTERED in favor of defendant Warrington Township and against plaintiff Omnipoint Communications Enterprises, L.P. on Counts I and II of plaintiff's complaint;

4. Count III of plaintiff's complaint is DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3); and

5. The Clerk shall CLOSE this case statistically.