SBA COMMUNICATIONS,
INC., Plaintiff,

v.

ZONING COMMISSION OF THE
TOWN OF BROOKFIELD,
Defendant.

No. 3:00CV0006 GLG.

United States District Court,
D. Connecticut.

Sept. 6, 2000.

John W. Knuff, Hurwitz & Sagarin, Milford, CT, for Plaintiff.

Thomas R. Gerarde, Bruce J. Gelston, Howd & Ludorf, Hartford, CT, Thomas A. Rouse, Brian C. Roche, Pullman & Comley, Bridgeport, CT, for Defendant.

## DECISION

GOETTEL, District Judge.

Plaintiff SBA Communications, Inc. ("SBA") moves for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure in its action against Defendant Zoning Commission of the Town of Brookfield (the "Commission"). SBA brought this action alleging violations of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), appealing the Commission's denial of SBA's application for special permits to construct a wireless telecommunication facility on a leased parcel at 70 Vale Road in the town of Brookfield. SBA set forth five counts in its Complaint: (1) declaratory judgment; (2) permanent injunction; (3) writ of mandamus; (4) permanent injunction, costs, and attorneys' fees pursuant to 42 U.S.C. § 1983; and (5) costs and other relief pursuant to violations of unspecified state laws. In an earlier ruling on the Commission's motion to dismiss, the Court dismissed Counts One and Three. The Court heard oral arguments relating to the instant motion on July 19, 2000. For the reasons set forth below, the Court DENIES Plaintiff SBA's motion for summary judgment [**Doc. # 16**] and GRANTS sua sponte Defendant Zoning Commission's motion for summary judgment, without prejudice to Plaintiff re-submitting its application to the Zoning Commission for further proceedings in accordance with this decision.

## I. BACKGROUND

SBA provides various services to the six licensed personal wireless telecommunications carriers in Connecticut (Bell Atlantic Mobile, Sprint PCS, Nextel, Omnipoint, AT & T, and SNET). These services include locating and acquiring, either through lease or purchase, appropriate sites for the construction of telecommunications towers or monopoles. SBA obtains the necessary regulatory approvals, erects a monopole, constructs a fenced compound and access roads, and then leases space on the monopole to cellular, PCS (Personal Communications Services), or SMR (Specialized Mobile Radio) carriers, who are responsible for obtaining separate regulatory approvals for the addition of their antennae to the monopole and associated equipment to the site.

SBA located a gap in coverage in the southern Brookfield area, determining that several of Connecticut's wireless telecommunications carriers provide inadequate or no service in the area where Interstate 84 intersects Routes 7 and 202. SBA then identified the search ring, i.e., the area within which a telecommunications facility would have to be located in order to fill the gap in coverage. After examining and rejecting several other locations within the search ring, SBA entered into a lease with the property owner for a 9600 square foot parcel of property located at 70 Vale Road in the Town of Brookfield.

SBA originally filed an application with the Commission for special permits and a zoning variance to erect a 195 foot tall monopole within a fenced compound area with related utilities and an access drive. The Commission denied that application because the proposed tower's height ex-

ceeded the zoning limits.[1] SBA modified the plans to reduce the height of the tower to 93.5 feet, below the regulatory limit of 100 feet, and resubmitted its application in September 1999. The proposed 93.5 foot tall monopole would be capable of supporting the antennae of three licensed carriers at the 93.5, 83.5, and 73.5 foot levels.

SBA argues that the proposed facility complies with all applicable regulations and that the property is an ideal location for the facility for many reasons. The property is located within an IG–80 zone, in which industrial and commercial uses, including telecommunications towers and antennae, are specifically permitted. Town of Brookfield Zoning Regulations ("Zoning Regs.") §§ 242–312, 242–501G(18), 242–501I. The leased property is surrounded by light industrial and commercial uses and a spur railway line, and high-tension power lines are located adjacent to the property. Connecticut Light & Power ("CL & P") lattice towers run along the south side of another railway line located within 1000 feet to the south of the property.

The property is approximately 1000 feet away from the nearest residential zone, although there are residential uses within the industrial zone surrounding the property. Mature trees provide visual screening to the east of the property. The nearest existing telecommunications tower is over one mile from the proposed site, and SBA claims that there are no other buildings or structures of sufficient height within the search ring on which a carrier might co-locate its antennae array. At 93.5 feet tall, the monopole would not exceed the regulatory limit of 100 feet. In addition, SBA presented expert testimony by Mr. Robert Monfredi, a radio frequency engineer, that the proposed project would comply with the FCC regulations on power

output, assuming maximum utilization of the facility. *See* RF Emissions Report, R. 18.

The Commission held public hearings to consider the application on November 4, November 18, and December 2, 1999. During those public hearings, the Commission heard testimony from Mr. Thomas Flynn, SBA's zoning consultant, from Mr. Monfredi, and from various residents and taxpayers. The Commission received extensive documentary evidence, including site plans, propagation maps, maps of the search ring, photographs and simulations, and structural engineering reports, as well as numerous letters from members of the public opposing the project.

The Commission voted to deny the application on December 16, 1999 and notified SBA by letter dated December 20, 1999 to Mr. Flynn. In sum, the Commission based its denial on: (1) SBA's failure to exhaust collocation alternatives; (2) the failure to minimize "the perception of the diminution of residential property values created by the location of the proposed tower"; (3) concerns about the Federal Communications Commission ("FCC") standards for power output; (4) concerns about minimizing health and safety risks to surrounding residential and other population areas; and (5) failure to provide "plans and elevation plans of the antenna structures."

SBA now moves for summary judgment on the grounds that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law based entirely on the record of the public hearings before The Commission. The Commission argues that genuine issues of material fact exist, precluding summary judgment.

---

1. SBA filed a similar application for a 195 foot tall monopole in the Town of New Milford, about 12½ miles north of Brookfield, on or about June 30, 1999. That application was denied on November 23, 1999. *See SBA*

*Communications, Inc. v. Zoning Comm'n,* No. CV000081364S, 2000 WL 1056563 (Super.Ct.Conn. July 18, 2000) (dismissing SBA's appeal from the denial).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed. R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There is no genuine issue of material fact if the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Id.* at 255, 106 S.Ct. 2505. If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

This Court finds the summary judgment motion is appropriate because the material facts are not in dispute. The parties have submitted the record from the Brookfield Zoning Commission ("return of record"), from which the Court is able to discern no genuine issue of material facts.

## III. DISCUSSION

### A. FEDERAL TELECOMMUNICATIONS ACT

Congress enacted the Telecommunications Act of 1996 ("TCA" or "the Act"), 47 U.S.C. § 332, in order to increase competition in the telecommunications industry. *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 49–50 (D.Mass.1997). The TCA "effects substantive changes to the local zoning process ... by preempting any local regulations, including zoning regulations, which conflict with its provisions." *Id.* at 50. Local zoning commissions must comply with the Act's procedural requirements when reviewing applications for telecommunications site applications. The Act does not, however, "encroach upon the substantive standards to be applied under established principles of state and local law." *Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 24 F.Supp.2d 359, 366 (D.N.J. 1998).

The Act provides, *inter alia,* that any denial of a request to place, construct, or modify personal wireless service facilities must be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii). This provision assumes, however, that the applicant has supported its permit application with a "certain minimal amount of information." *Omnipoint Communications Enter., Inc. v. Town of Amherst,* 74 F.Supp.2d 109, 122 (D.N.H.1998). Denials of siting requests are subject to judicial oversight at a higher level of scrutiny than standard local zoning decisions in order to determine whether the denials were supported by substantial evidence. *See Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 493 (2d Cir.1999).

Courts are divided as to whether the TCA shifts the burden of proof to the government agency that denied the applicant's siting request. *Compare Town of Easton,* 982 F.Supp. at 52; *Smart SMR of N.Y., Inc. v. Zoning Comm'n,* 995 F.Supp. 52, 56 (D.Conn.1998); *Cellco Partnership v. Town Plan & Zoning Comm'n,* 3 F.Supp.2d 178, 182 (D.Conn.1998); *PrimeCo Personal Communications L.P. v. Village of Fox Lake,* 26 F.Supp.2d 1052, 1064 (N.D.Ill.1998); *Omnipoint Communications Enter., Inc. v. Town of Amherst,* 74 F.Supp.2d 109, 122 (D.N.H.1998) ("Although a telecommunications provider must come forward with a certain minimal amount of information in support of its applications in order to prevail, once an application has been supported this provision places the burden of proof to support

any denial on the local government entity issuing the denial."); *with Cellular Tel. Co. v. Zoning Bd. of Adjustment,* 24 F.Supp.2d at 366; *Century Cellunet v. Ferrysburg,* 993 F.Supp. 1072, 1077 (W.D.Mich.1997).

The Second Circuit discussed the allocation of the burden of proof in *Cellular Telephone Company v. Town of Oyster Bay,* 166 F.3d at 496–97, but declined to decide whether the burden belonged to the zoning board to prove that its decision was supported by substantial evidence, or to the permit applicant to prove that the locality's decision was not supported by substantial evidence. The circuit court found that the applicant in that case would prevail under either allocation of the burden of proof. *Id.*

■ In determining whether a denial was supported by substantial evidence, local and state zoning laws govern the weight to be given the evidence. A local zoning commission, which acts in an administrative capacity when considering an application for a special permit, does not have discretion to deny the permit if the proposal meets the relevant standards enumerated in the regulations. *See Irwin v. Planning & Zoning Comm'n,* 244 Conn. 619, 628, 711 A.2d 675, 679 (1998); *A.P. & W. Holding v. Planning & Zoning Bd.,* 167 Conn. 182, 185, 355 A.2d 91 (1974). Although a district court generally defers to a zoning board's decision by not substituting its judgment for that of the board, "it must overturn the board's decision under the substantial evidence test if it 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.'" *BellSouth Mobility Inc. v. Gwinnett County,* 944 F.Supp. 923, 928 (N.D.Ga.1996) (quoting *Bickerstaff Clay Products Co. v. NLRB,* 871 F.2d 980, 984 (11th Cir.1989)); *see also Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d at 494. "Substantial evidence" means less than a preponderance, but more than a mere scintilla of

evidence. *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d at 494. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951).

## B. Grounds for Denial

■ The Commission maintains that each of the five reasons it articulated in its denial of SBA's application was based on substantial evidence in the record. If substantial evidence in the record supports even one of the reasons given for the denial, the Court must sustain the Commission's decision. The Court will examine each of the reasons in turn.

### 1. Failure to exhaust co-location alternatives

The Commission's first stated reason for denial was SBA's failure to exhaust co-location alternatives, as required by the Town zoning regulations. The relevant paragraph of the denial letter stated:

> The applicant did not exhaust collocation [sic] alternatives. Information provided at the public hearing indicated that collocation on CL & P lattice towers had not been investigated. In addition, locations at Brookfield Commons, Delmar Drive and lower Federal Road, i.e., 18–20 Federal Road had not been investigated, which from coverage data provided, might have been considered possibilities. Furthermore, potential sites within the Still River valley in Danbury, e.g., Stew Leonard, etc. had not been evaluated.

The zoning regulations permit an applicant to construct new towers only after exhausting possible placement of antennae on existing towers or buildings (so-called "co-location"). *See* Town of Brookfield Zoning Regulations ("Zoning Regs.") § 242–312B(13). The zoning regulations do not, however, require an applicant to investigate all possible locations for the

monopole facility, once the applicant has exhausted antennae co-location possibilities.

a. *Failure to exhaust co-location on CL & P towers*

SBA testified that there were no buildings or structures of sufficient height for co-location purposes within the search ring, and that there are no other existing towers within one mile of the proposed site. At the public hearing on November 18, 1999, however, Mr. Flynn conceded that SBA had not considered the CL & P lattice towers adjacent to the railroad line south of the property.[2] The Commission also points out that SBA is in the business of building towers and therefore has a strong disincentive to find alternative sites for co-locating antennae.

As noted above, a telecommunications provider must come forward with a certain minimal amount of information in support of its application in order to prevail. In this case, the Commission alleges that the Plaintiff has failed to adequately support its application with evidence regarding the CL & P lattice towers. We agree. Despite its repeated assertions that no structures within the search ring are tall enough for antenna co-location, Plaintiff conceded at oral argument that it had no information on the CL & P towers, including their height and distance from the proposed facility. Plaintiff also asserted at oral argument that the CL & P towers were not considered because they were not within the search ring. A thorough review of the maps in the record proves otherwise. *See* Overall Site map S–1, R. 17 (showing 4 "towers," the nearest approxi-

mately 1000 feet to the south of the proposed facility).

The CL & P towers may ultimately prove of insufficient height to be suitable for antenna co-location, or they may be unavailable. Nonetheless, we think the burden of providing this information properly belongs to the Plaintiff as part of that "certain amount of minimal information" required to support its application.

In holding that the Plaintiff must support its application with evidence of the CL & P towers' unsuitability or unavailability for antenna co-location, we are mindful of the controversy regarding the proper allocation of the burden of proof in actions brought pursuant to the Telecommunications Act. *See supra* Part III.A. However, here, as in *Cellular Telephone v. Oyster Bay*, 166 F.3d at 496–97, whether we allocate the burden to the Defendant to prove that its decision was supported by substantial evidence, or to the Plaintiff to prove that the Defendant's decision was not supported by substantial evidence, we find that the Defendant would prevail as to this ground. The defendant has based its decision on adequate evidence in the record that the Plaintiff was aware of the existence of the CL & P towers and failed to provide adequate information on them to substantiate its assertions that there were no structures suitable for antenna co-location.

b. *Failure to exhaust other possible sites for facility*

Plaintiff testified that it investigated six other sites within the search ring as possible alternative locations for the monopole

---

**2.** M [Commission member]: I suppose CL & P is not kindly disposed to mounting antennas on top of their transmission tower.

TF [Thomas Flynn]: Not that kind of facility, no. They do ...

M: Why?

TF: Because they're not structurally ... they'd have to redo the tower itself. They do allow certain types of power mounts on their lattice structures.

M: There's lattice structures here along the southerly railroad line that are already ...

TF: We had not considered that as an alternative at this point.

M: But CL & P doesn't have a firm law that says, "no way on my tower"?

TF: No, no ... it is technologically possible, and that southerly line may meet somebody's need, but not at this....
Tr. of Nov. 18, 1999 meeting, R. 23, at 25.

facility, but the owners of those properties rebuffed its offers to lease their properties. The particular sites listed in the denial letter (other than the CL & P lattice towers) were never discussed during the public hearings, and there is no evidence whatsoever to support the Commission's suggestion of these sites as alternative locations for the facility. Indeed, there is no evidence in the record of any other unconsidered sites. Moreover, the zoning regulations do not require that a proposed location be the best or ideal site for a telecommunications facility, only that the application complies with the relevant regulations. Thus, SBA's failure to consider the sites listed in the denial letter cannot serve as a proper basis for denying the application.

### 2. *Concerns regarding residential property values*

The Commission's second basis for denying SBA's application concerns property values. The relevant paragraph states:

Notwithstanding a generalized real estate statement which was provided by the applicant, specific statements presented during the public hearing by a subdivision owner within 1,000 feet of the project and a real estate broker within 1,500 feet of the project cited that there will be an adverse economic impact on their property caused by the advent of a tower in the proposed location. Furthermore, in a telephone survey conducted by the Commission, area real estate brokers indicated a definitive adverse effect on residential properties in proximity to the proposed site which reinforce [sic] the statements presented by others at the public hearing. Accordingly, the Commission finds that, at a minimum, there is the perception of the diminution of residential property values created by the location of the proposed tower.

The last sentence of this paragraph relies on the Town regulations' purpose statement regarding telecommunications towers and antennae, which reads: "These regulations are necessary in order to ... [m]inimize the perception of diminution of adjoining property values due to the location of such devices." Zoning Regs. § 242–312A(6).

SBA argues that the inclusion of the word "perception" creates an unconstitutionally vague standard. The Commission gives this argument two conclusory sentences in its opposing papers, in which it asserts that there is no difference between a perception of diminution and actual diminution in property values. We disagree with the Commission's view. However, while we find the purpose statement, standing alone, is likely unenforceable, we need not reach the issue of whether it is impermissibly vague.

■ Generalized statements of zoning purpose cannot be utilized as a basis to deny a siting request that otherwise complies with the specific criteria articulated in the substantive zoning regulations. *See, e.g., Kenyon Oil Co., Inc. v. Planning & Zoning Comm'n,* No. 385324, 1996 WL 694633, at *5 (Conn.Super.Ct. Nov. 25, 1996) (citing *TLC Development Inc. v. Planning & Zoning Comm'n,* 215 Conn. 527, 530 n. 2, 577 A.2d 288 (1990)). Connecticut law states that "[a] site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning ... regulations." Conn.Gen.Stat. § 8–3(g). While a legislative purpose statement is generally quite broad, "[t]here is no question that criteria contained in a zoning commission's regulations must be as reasonably precise as the subject matter requires and as reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations." *Helbig v. Zoning Comm'n,* 185 Conn. 294, 307–08, 440 A.2d 940 (1981). The canons of statutory construction require that the regulations be construed as a whole, since particular words or sections, and especially the purpose statements, when considered separately, may be insufficient to provide rea-

sonably precise standards. Thus, the Commission may base its denial on the purpose statement only in conjunction with, and not as an alternative to, the substantive standards set forth in the applicable zoning regulations. *See Kosinski v. Lawlor*, 418 A.2d 66, 68, 177 Conn. 420, 423 (1979); *see also Sowin Assoc. v. Planning Zoning Comm'n*, 23 Conn.App. 370, 376, 580 A.2d 91 (1990).

The Commission has, however, failed to point to any substantive provision relating to protecting property values with which SBA's application fails to comply. Furthermore, we find that the Commission did not base its decision on this ground upon substantial evidence.

The Commission stated that it based its decision on the opposition voiced by a local residential subdivision owner and a local real estate agent, and the informal survey taken by Commission member George Murphy. The Commission also noted in the denial letter its rejection of the "generalized real estate statement which was provided by the applicant." This is apparently a reference to the real estate analysis report which SBA submitted during the public hearings in support of its application. The report was prepared by Arthur B. Estrada, a certified real estate appraiser, in connection with a proposed monopole facility in Litchfield, Connecticut. The analysis showed similar telecommunications facilities have had no impact on property values in four communities in Connecticut (Redding, Westport, Wilton, and Canton), and concluded that the proposed Litchfield facility would have no impact on property values in that town.

■ Although a commission may deny an application because it does not believe expert testimony, a commission has the burden of supporting its decision not to believe the expert testimony with substantial evidence in the record. *Kaufman v.*

*Zoning Comm'n*, 232 Conn. 122, 157, 653 A.2d 798 (1995). There was no testimony opposing the real estate analysis report other than the generalized concerns expressed by town residents about possible declines in property values. One of the residents who opposed the facility at the public hearing was a local real estate agent whose residence is within 1500 feet of the proposed facility. She expressed concerns about health-related effects of radio frequency emissions as well as property value decline.[3]

In addition, a member of the Commission, Mr. George Murphy, conducted an informal survey of four local real estate agents in order to "reinforce" the residents' property value concerns. Mr. Murphy's memo states that, in the opinion of the local real estate agents, a residential property's proximity to the proposed facility would have the effect of decreasing the property's selling price, in some cases by as much as 10%, as well as increasing the length of time the property would be on the market. The Commission received and discussed the memo as "Old Business" at its December 16, 1999 meeting, after the close of the public hearing.

■ SBA argues that Mr. Murphy's memo is extra-record evidence which the Commission may not properly consider in its evaluation of SBA's application. We agree. Although an administrative agency may rely on non-record facts within its special knowledge and experience or discovered through its own investigation, a party adversely affected by such non-record facts must have an opportunity to rebut at an appropriate stage in the proceedings. *See Connecticut Natural Gas Corp. v. Public Utilities Control Authority*, 183 Conn. 128, 139 n. 9, 439 A.2d 282 (1981). SBA had no opportunity to rebut the findings reported in Mr. Murphy's memo.

---

**3.** The Second Circuit has noted, without deciding, the "troubling questions" inherent in the evaluation of property value evidence, including whether fear of declining property values is "actually a proxy for the impermissible ground of environmental effects." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d at 496.

Furthermore, what Mr. Murphy summarized in his memo were not facts, or professional or technical assistance in matters beyond his expertise, but rather were mere unsubstantiated opinions. Such unsupported opinion testimony, and generalized concerns do not constitute substantial evidence, especially in light of SBA's contradictory expert testimony. *See Cellular Tel. v. Town of Oyster Bay,* 166 F.3d at 496. Therefore, we find that the Commission's denial on the basis of property values was improper.

3. *Concerns regarding the FCC standards*

The Commission's third ground for denying SBA's application states: "Furthermore, although the proposed project would appear to conform to the FCC regulations concerning power output, information presented at the public hearing would suggest that the FCC standard might not stand the scrutiny of more current evidence and technology." SBA correctly points out that the Telecommunications Act prohibits denial based on "the environmental effects of radio frequency emissions, to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

The Commission concedes in its opposition papers that it may not properly base its denial on the environmental effects of RFE's, and goes on to explain that the denial letter was merely a "convenient vehicle" for what it now calls "political commentary with respect to the FCC standard." The Commission admits that it should have "bifurcate[d] its commentary from the actual basis for denial." We therefore consider this ground withdrawn.

4. *Concerns regarding health and safety risks*

■ The Commission's fourth basis for denying SBA's application was the failure to "provide information that the omni-point concept of energy distribution would not be limited, shielded or channeled in such a manner as to minimize exposure to surrounding residential and other population areas thereby minimizing health and safety risks." The Commission appears to be referring to isotropic radio frequency emissions ("RFE's") from omni-directional antennae, as opposed to sectored or linear directional antennae, a topic discussed at the Nov. 18 public hearing. *See* R. 23 at 12–15.

As discussed above, the Telecommunications Act prohibits denial based on "the environmental effects of radio frequency emissions, to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). The Second Circuit has noted that it considers the terms "environmental effects" and "health concerns" to be interchangeable. *See Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 494 n. 3 (2d Cir.1999). Thus, the TCA prohibits denial of a siting request based on fear of risk to health provided that the facility complies with FCC standards for RFE's.

SBA presented expert testimony at the public hearing regarding the proposed facility's compliance with the FCC regulations. *See* RF Emissions Report, R. 18. After a careful search of the record, we find no evidence in the record opposing that testimony.

Much of the citizens' testimony at the public hearings expressed generalized concerns about the possibility of adverse health effects from RFE's emanating from the proposed cell site. Although a local authority does not violate the Act by "merely inquiring into the safety of emissions from a wireless facility," such generalized concerns do not constitute a legitimate basis for denying a site request. *Id.* at 495 (citing *Smart SMR of N.Y. v. Zoning Comm'n,* 995 F.Supp. 52, 58 (D.Conn. 1998)).

We find no evidence in the record to support denial on this basis.

**5. *Failure to provide plans for the antennae structures***

 The Commission's fifth and final reason for denying SBA's application was the failure to provide "plans and elevation plans for the antennae structures" in accordance with Section 242–312(c)(3). SBA argues that denial on this basis is not supported by substantial evidence and, furthermore, that the cited regulation is inapplicable to the proposed monopole facility.

Section 242–312(c)(3) requires applications for new towers to include "plan and elevation drawings showing the proposed tower, associated equipment, antennae and other structures on site."

Because SBA proposed to construct only a bare monopole, the requirement concerning plans for antennae and other structures does not apply. Carriers interested in leasing space on the monopole for their antennae would need to seek their own permits from the zoning board. Nonetheless, SBA did provide elevation plans with its application, including plans and elevation drawings for the proposed tower showing five sets of antennae attached on triangular platforms. *See* R. 2, Map # SBA CTSS4275–015/Brookfield # 2, drawing no. C–4, Site Details, sheet no. 5, Tower Elevation # C–4.1. The board members and Mr. Flynn discussed the elevation plans at the Nov. 4 hearing, and Mr. Flynn updated the drawing to show that the monopole would carry only three sets of antennae. Mr. Flynn crossed out two sets of antennae and initialed the plan. See R. 12 at 5; R. 13 at 8.

Because plans and drawings for the antennae were provided even though they were not required, the Court finds that denial on this basis is not supported by the evidence and is improper.

## IV. CONCLUSION

In sum, we find that the only legitimate ground for denial was SBA's failure to exhaust co-location alternatives, specifically, SBA's failure to provide evidence regarding the suitability and availability of the CL & P lattice towers to the south of the leased property for antenna co-location.

For the reasons set forth above, the Court DENIES Plaintiff SBA's motion for summary judgment [**Doc. # 16**] and GRANTS sua sponte summary judgment in favor of the Defendant Zoning Commission, without prejudice to Plaintiff's resubmitting its special permit application to the Zoning Commission supplemented with additional evidence showing that the CL & P towers are unsuitable or unavailable for antenna co-location. This decision is also without prejudice to the Plaintiff filing another action should the Defendant Zoning Commission fail to issue the special permit within 20 days after Plaintiff's re-submission of its application properly supplemented in accordance with this opinion.

By virtue of this decision, Plaintiff's other claims under 42 U.S.C. § 1983 and unspecified state laws are rendered moot. The Clerk is directed to enter judgment in favor of the Defendant and close this file.

SO ORDERED.