**LAURENCE WOLF CAPITAL MANAGEMENT TRUST,**
Plaintiff,

v.

**CITY OF FERNDALE, Defendant.**

**No. CIV. 00–40225.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 18, 2000.

---

Paul D. Christ, Beier Howlett, Bloomfield Hills, MI, for defendant.

Roderick S. Coy, Clark Hill, Okemos, MI, Matthew A. Levin, Frank, Stefani, Troy, MI, J. Laevin Weiner, Colista, Adams, Royal Oak, MI, for plaintiff.

## ORDER

GADOLA, District Judge.

On December 5, 2000, a hearing was held in open court, the Honorable Paul V. Gadola presiding, and the Court afforded the parties an opportunity to present evidence from the administrative record in support of, or opposition to, the issues of law delineated below.

## I FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff owns an office building in the City of Ferndale ("Ferndale"). That building is located in a C-4 zoning district, which is designated for retail and office use. Plaintiff and AT & T Wireless Services ("AT & T") entered into a lease agreement by which AT & T would place a wireless-communication antenna atop Plaintiff's building. That contract was contingent upon AT & T's successful bid to secure permission to build the tower. Toward that end, AT & T applied for a zoning variance from Defendant.

In December, 1999 and January, 2000, Defendant held two public hearings of its Zoning Board ("the Board") to discuss the issue, and then provided notice of its denial of the variance in a letter to Plaintiff dated January 27, 2000. Defendant grounded its denial of the variance in Defendant's Zoning Ordinance § 4.39(g), which limits wireless-communications antennas in the C-4 zoning district. Plaintiff nonetheless has one wireless-communications antenna on its building.

Plaintiff then filed a complaint in the Circuit Court for the County of Oakland. On April 18, 2000, that Court, the Honorable J. Phillip Jourdan presiding, issued an opinion and order holding, *inter alia*, that Defendant had not "supported its decision by evidence on the record," as required by Michigan's Administrative Procedures Act, M.C.L. § 24.306. *See Laurence Wolf Capital Management Trust, Inc. v. City of Ferndale*, Case No. 00–020893 at *4 (Mich. Cir. Ct. Oakland County April 18, 2000). The Circuit Court therefore remanded the matter to Defendant's Board of Zoning Appeals for one reason: so that Defendant could provide a statement of the reasons for which it had denied AT & T's request for a variance. *See id.* at *5.

The Board of Zoning Appeals held a hearing in accordance with that order on May 10, 2000, at which time it placed its reasons for denying the variance on the record. The Board then corrected and approved the minutes of its May 10 meeting on May 16, 2000. The Board adopted five reasons for its denial of the variance:

1. No evidence was brought forward that the property could not reasonably be used under the current zoning;

2. no unique circumstances existed that would allow only this use;

3. the monopole antenna that would be erected on Plaintiff's property would alter the neighborhood's character;

4. Plaintiff's problem was self-created; and

5. the monopole's height would have required a variance as to height.

On June 13, 2000, Plaintiff instituted a suit in this Court alleging that Defendant's actions were in violation of the Telecommunications Act of 1996, 47 U.S.C. § 332

("the Act"). In Claim I, Plaintiff alleges that Defendant violated 47 U.S.C. § 332(c)(7)(B)(i) by prohibiting the provision of personal wireless services and 47 U.S.C. § 332(c)(7)(B)(iii) by not supporting its denial of AT & T's application in writing and with substantial evidence. In Claim II, Plaintiff alleges that § 4.39 of Defendant's zoning ordinance violates the Act because it discriminates against providers of functionally-equivalent services and effectively prohibits personal wireless services.

The parties agree that the Court must decide the following issues of law:

1. Whether the Board complied with the written-decision requirements of the Act;

2. whether the burden of proof in matters of challenge and appeal under the Act is upon a petitioner or the respondent municipality;

3. whether the variance applied for should be classified as a use variance or a non-use variance;

4. whether the Board imposed the proper requirements on AT & T in determining whether the tests had been met to grant a variance;

5. whether the Board's actions regarding AT & T's application complied with the Act's standards and requirements;

6. whether the Board's denial of AT & T's application violated the Act[1]; and

7. whether the zoning ordinance and its subparts violated, either specifically or in total, the Act's provisions.

## II ANALYSIS

■ Before addressing the issues of law outlined by the parties, the Court notes that it must limit its evidentiary review to the contents of the administrative record. *See Illinois Bell Tel. Co. v. WorldCom Techs., Inc.*, No. 98 C 1925, 1998 WL 419493, at *2 (N.D.Ill. July 23, 1998). This is so because, although the Act does not state explicitly the evidentiary scope of a district court's review of an administrative decision, the default rule is that a district court's consideration is limited to the administrative record. *See id.* (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963)); *accord AT & T Comms. of the Southwest, Inc. v. Southwestern Bell Tel. Co.*, 86 F.Supp.2d 932, 943–44 (W.D.Mo. 1999) (citing cases).

This rule particularly is cogent in regard to the Act because, by receiving new evidence, the reviewing court would delay adjudication, thereby frustrating the purpose underlying the Act: to aid the rapid entry of competitors into telecommunications markets. *See U.S. West Comms., Inc. v. MFS Intelenet, Inc.*, No. C97–222WD, 1998 WL 350588, at *1 (W.D.Wash. Jan.7, 1998). The Court must therefore limit its review to the administrative record.

## A. BURDEN OF PROOF

■ The parties disagree as to whether the burden of proof in matters of challenge and appeal under the Act is upon a petitioner or the respondent municipality. Each, unsurprisingly, would assign the burden to the other. Because this is an issue of first impression in this jurisdiction, it warrants extended discussion.

The Act contains no provision explicitly assigning the burden of proof in matters of challenge and appeal. Citing *Barwacz v. Michigan Dept. of Educ.*, 674 F.Supp. 1296 (W.D.Mich.1987) (Enslen, J.), Defendant argues that, generally, it is appropriate to assign the burden of proof in administrative appeals to the party challenging the agency's findings and decision. *See id.* at 1302. Defendant further points out that some district courts have assigned the burden of proof under the Act to the party seeking to overturn an agency's decision. *See, e.g., Century Cellunet of Southern Mich., Inc. v. City of Ferrysburg*, 993 F.Supp. 1072, 1077 (W.D.Mich.1997) (En-

---

**1.** For reasons discussed *infra*, the Court will analyze issues one, five, and six together.

slen, C.J.) (citing *Barwacz*, 674 F.Supp. at 1302).

Most courts that have considered the issue, however, have concluded that the Act shifts the burden of proof to the agency denying an applicant's siting request. *See SBA Comms., Inc. v. Zoning Comm'n*, 112 F.Supp.2d 233, 236–37 (D.Conn.2000) (citing cases). This Court adopts the majority position for two reasons.

First, the majority rule comports with Congress's intent and the Act's text. One of the chief reasons Congress passed the Act was to facilitate the rapid expansion of competitors into wireless-communications markets. *See U.S. West Comms.*, 1998 WL 350588, at *1 (citing *Iowa Utils. Bd. v. FCC*, 120 F.3d 753, 791 (8th Cir.1997)). Informed by that purpose, Congress required the agency denying a siting request to put its denial in writing and to support its decision with "substantial evidence contained in a written record." 47 U.S.C.A. § 332(c)(7)(b)(iii) (West 2000).

Under the Act, requiring an applicant to bear the burden of proof on appeal from an administrative decision would be inconsistent with Congress's intent and the statute's language because it is relatively easier and faster for the denying municipality, having created the administrative record in the first instance, to prove that its denial was in writing and was backed by substantial evidence. An unsuccessful applicant, conversely, would have to prove a negative on the basis of a record that it did not create; i.e., it would have to show that the denial was not in writing or was not supported by substantial evidence.

The second reason that this Court adopts the majority rule is that the minority rule is poorly supported. In *Century Cellunet*, the district court did no more than cite to *Barwacz*, a case decided before passage of the Act. *See Century Cellunet*, 993 F.Supp. at 1077. *Sprint Spectrum, L.P. v. Board of County Com'rs of Jefferson County*, 59 F.Supp.2d 1101 (D.Colo.1999), to which Defendant cites, does no more than cite to *Century Cellu-*

*net* and note that the minority approach is consistent with the normal deference afforded agency decisions. *See id.* at 1105. In *Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 24 F.Supp.2d 359 (D.N.J.1998), to which Defendant also cites, the term "burden of proof" appears exactly once, and the district court does not explain why it places the burden on the applicant. *See id.* at 367. None of these cases addresses Congress's concern with expediting the expansion of competitors into local telecommunications markets vis-a-vis the burden of proof. The Court thus finds the minority position unpersuasive.

The Court holds that the agency denying an applicant's request bears the burden of proof in matters of challenge and appeal under the Act.

## B. THE ACT'S WRITTEN–DECISION REQUIREMENTS

■ The Court construes issues one, five, and six as relating to Defendant's alleged noncompliance with the following provision of the Act: "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C.A. § 332(c)(7)(B)(iii). For ease of use, the Court will refer to this entire stricture as the "written-decision requirement." The Act's written-decision requirement exists to enable judicial review of agency decisions. *See Virginia Metronet, Inc. v. Board of Supervisors*, 984 F.Supp. 966, 972 (E.D.Va.1998). Judicial review is necessary to ensure that a denial of a request to place, build, or modify wireless facilities is supported by "substantial evidence," "is based upon the applicable objective standards and policies of the governing body" and meets the requirements of the Act. *Id.*

Defendant, a local government, through the instrumentality of the Board, denied AT & T's request to construct a personal

wireless-service facility; i.e., an antenna. The question becomes whether Defendant's denial, explained by the reasons delineated in the written minutes of the Board's meeting of May 10, 2000, which the Board approved on May 16, 2000, meets the Act's requirement that such a denial "shall be in writing and supported by substantial evidence contained in a written record."

Plaintiff argues that the Act's written-decision requirement cannot be satisfied with the "written minutes of a meeting in which a governmental authority considers a provider's application." (Pl. Br. at 6.) This argument is misguided. Nothing in the text of § 332(c)(7)(B)(iii) supports such a proposition. Rather, the subsection creates two requirements: (1) that the decision be in writing; and (2) that the decision be supported by substantial evidence contained in a written record.

### 1. Denial in Writing

■ Defendant met the writing requirement for two reasons. First is that the minutes of the Board's May 10 meeting, which stated that Defendant denied AT & T's application for a zoning variance and listed the reasons for so doing, are a writing for purposes of § 332(c)(7)(B)(iii). *See AT & T Wireless PCS, Inc. v. City Council,* 155 F.3d 423, 429 (4th Cir.1998). The second reason is that, during oral argument, Plaintiff admitted that AT & T received a copy of the minutes of the May 10 meeting listing the reasons for Defendant's denial of AT & T's application. Assuming, *arguendo,* that the Act requires Defendant to affirmatively notify an applicant of its denial of a siting application, Defendant produced an adequate written-denial of AT & T's application. *See PrimeCo Personal Comms., L.P. v. Village of Fox Lake,* 26 F.Supp.2d 1052, 1061 (N.D.Ill.1998) (holding that the "in writing" requirement is met where the applicant receives a written denial).

Even if the minutes of the May 10 meeting did not constitute a written denial,

Defendant's letter to AT & T on January 27 clearly states that AT & T's request was denied, and would therefore meet the Act's requirement that a denial be in writing.

### 2. Substantial Evidence

■ The second prong of the written-decision requirement is that a municipality that denies a siting request covered by the Act must support that decision with "substantial evidence contained in a written record." "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support the conclusion.'" *Telespectrum, Inc. v. Public Serv. Comm'n,* 227 F.3d 414, 423 (6th Cir. 2000) (citations omitted). When determining whether evidence is substantial, the Court must "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Court is confined to a limited review of the Board's decision and of the record made in the administrative hearing process.

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc) (internal quotation omitted).

■ Applying this standard to the facts at hand, this Court has already agreed with Judge Jourdan that Defendant's January decision to deny AT & T's application was "not supported by evidence on the record," and that "reasons supporting the denial of the use variance were insufficiently articulated to allow" the state or federal court to "engage in meaningful judicial review"; i.e., that Defendant failed

the substantial-evidence standard. *Laurence Wolf Capital Management Trust v. City of Ferndale,* No. 00–40225, at * *5–6 (E.D.Mich. Oct.31, 2000) (docket entry 27). The chief reason that the Court reached this conclusion was that Defendant scarcely articulated the "reasons supporting the denial" in its letter of January 27. As of May 16, 2000, however, Defendant articulated the five reasons listed above as justifying its decision to deny AT & T's requested zoning-variance. The question thus becomes: does substantial evidence contained in the administrative record support any of those reasons? The Court finds that substantial evidence supports at least two of Defendant's reasons for the denial.

The Court first considers evidence supporting Defendant's second reason: that "no unique circumstances existed that would allow" only the use requested by AT & T. As AT & T's representative admitted during the Board's hearing on December 21, 1999, AT & T could apply to place the proposed antenna on at least one alternative site that might be permitted under Defendant's zoning regulations,[2] and provided a diagram showing adequate locations within a half-mile radius of Plaintiff's building. (Pl.Ex. 4; Minutes of Board Hearing of Dec. 22, 1999 at 2.) It follows that the Board had evidence before it from which a reasonable mind could conclude that "no unique circumstances existed that would allow" only the use requested by AT & T.

During oral argument, Plaintiff sought to avoid this conclusion by maintaining that another of AT & T's representatives forcefully argued, during the Board's hearing of January 18, 2000, that Plaintiff's building was, in fact, the only suitable location for AT & T's antenna. Were the Court reviewing this issue de novo, it might well find the second of AT & T's representatives more credible than the

first, and therefore allow AT & T to erect its tower on Plaintiff's property.

The Court is not, however, reviewing the matter de novo; it is ascertaining whether Defendant's conclusion that another site might have served AT & T's purposes is supported by "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." For the reasons explained above, the Court concludes that it was.

▪ The same may be said of Defendant's third reason: that AT & T's proposed antenna would alter the neighborhood's character. The record contains two photos. One shows the neighborhood as it exists now. The other is altered to show the neighborhood as it would appear with the addition of AT & T's proposed antenna. (Record at Ex. F.) The Court has reviewed this evidence and concludes that a reasonable mind might accept these photos as adequate to support the conclusion that the proposed antenna would alter the neighborhood's character. This is so because, *inter alia,* the proposed antenna would be the tallest structure in the vicinity.

For the reasons discussed *supra,* the Court concludes that Defendant's denial of AT & T's application was in writing and that substantial evidence contained in a written record supported at least some of the reasons underlying that decision. The Court therefore holds that Defendant did not violate 47 U.S.C. § 332(c)(7)(B)(iii).

## C. WHETHER THE VARIANCE APPLIED FOR SHOULD BE CLASSIFIED AS A USE VARIANCE OR A NON–USE VARIANCE

The Court is not certain as to why the parties consider this to be an issue of law before the Court. First, the parties have already stipulated that "AT & T made

---

**2.** AT & T's representative "expressed that although AT & T would prefer to use an existing structure and a unipole, another option was to file an application to build a new tower in a district zoned for wireless antennas." (Minutes of Board Hearing of Dec. 22, 1999 at 2.) Despite this statement, Plaintiff has adduced no evidence that AT & T pursued this latter option.

application to the City of Ferndale for the permitting [sic] and a *use variance*" (JPS at 4 (emphasis added)). Because the parties have stipulated that AT & T applied for a use variance, the Court is inclined to hold that it applied for a use variance.

Assuming that the parties did not intend to stipulate to this matter, the Court nonetheless holds that AT & T applied for a use variance.

Under Michigan law, there are two types of variances. Use variances allow the use of land in a way that a zoning ordinance otherwise forbids. *See National Boatland, Inc. v. Farmington Hills Zoning Bd. of Appeals,* 146 Mich.App. 380, 380 N.W.2d 472, 476 (1985). Non-use variances do not concern real estate's use, but relate to "changes in a structure's area, height, setback, and the like." *Id.* (quoting *Heritage Hill Ass'n v. Grand Rapids,* 48 Mich.App. 765, 211 N.W.2d 77 (1973)).

Here, AT & T sought to erect an antenna in a C–4 zone, where their proposed antenna was prohibited by zoning ordinance. It follows that AT & T sought a use variance; i.e., it wanted to use Plaintiff's land in a way that the ordinance otherwise prohibited.

Plaintiff attempts to avoid this conclusion by pointing out that it already has an antenna on its building and, therefore, AT & T merely sought a non-use variance. (Pl. Br. at 9–10.) Plaintiff's argument is inapposite. That Defendant may be tolerating one potentially-illicit structure on Plaintiff's property does not alter the syllogism that a use variance seeks to allow what the zoning ordinance forbids, AT & T sought to erect an antenna forbidden by Defendant's ordinance, and AT & T therefore sought a use variance.

### D. WHETHER THE BOARD IMPOSED THE PROPER REQUIREMENTS ON AT & T IN DETERMINING WHETHER THE TESTS HAD BEEN MET TO GRANT A VARIANCE

The predicate for a use variance is that the applicant show that following the ordinance would cause unnecessary hardship. *See id.* According to the minutes of the Board's meeting of January 18, 2000, the Board applied the unnecessary-hardship standard. (Pl.Ex. 3 at p. 4.) It follows that the Board imposed the proper requirements on AT & T in determining whether to grant a variance.

### E. WHETHER DEFENDANT, THROUGH ITS ZONING ORDINANCE AND SUBPARTS, VIOLATED, EITHER SPECIFICALLY OR IN TOTAL, THE ACT'S PROVISIONS

Plaintiff avers that § 4.39 of Defendant's zoning ordinance violates 47 U.S.C. § 332(c)(7)(B)(i)(I) by discriminating among providers of functionally-equivalent services and violates 47 U.S.C. § 332(c)(7)(B)(i)(II) by effectively prohibiting wireless services. (Pl. Br. at 10–13.)

#### i. Discrimination

To establish a prima facie case of discrimination under § 332(c)(7)(B)(i)(I), a plaintiff must show (1) unequal treatment and (2) no legitimate basis for that unequal treatment. *See Omnipoint Comms. Enters., L.P. v. Warrington Township,* 63 F.Supp.2d 658, 661 (E.D.Pa. 1999) (citation omitted). Plaintiff argues that § 439(g) causes unequal treatment because it allows "administrative approval of the location of one, but not two [sic] antennas on existing structures, in this particular instance, a tower owned by Airtouch Cellular currently on Plaintiff's building, but [requires] additional providers like AT & T to jump through far more stringent administrative hoops to obtain approval for installation of an antenna on the same" building. (Pl. Br. at 13.) This, argues Plaintiff, "has the effect of refusing a competitor entry into a market simply because other services already exist," which "*unreasonably discriminates against subse-*

*quent providers of functionally equivalent services in clear contravention of the Act "* (Pl. Br. at 13 (emphasis in original)).

█ The problem with Plaintiff's argument is that AT & T is not refused entry into the market. On the contrary, as explained above, AT & T's own representative indicated that AT & T might be able to locate a suitable antenna on at least one other site within a half-mile of Plaintiff's building without running afoul of Defendant's zoning ordinance. Where, as here, a zoning ordinance allows a wireless-communications provider the opportunity to construct its proposed facility at another site near to its proposed location, there is no refusal of market entry and thus no discrimination. *See Aegerter v. City of Delafield,* No. 98–C–192, 1998 WL 1057733, at *7–8 (E.D.Wis. May 5, 1998); *cf. Cellular Tel. Co. v. Zoning Bd. of Adjustment,* 90 F.Supp.2d 557, 568 (D.N.J. 2000) (reasoning that AT & T's failure to investigate other sites for an antenna vitiated its claim under § 332(c)(7)(B)(i)).

### ii. Refusal of Market Entry

Plaintiff argues that Defendant's zoning ordinance effectively denies AT & T the opportunity to provide wireless services in the area. For reasons discussed above, this argument is spurious and the Court rejects it. Neither on its face, or as applied, does Defendant's ordinance deny AT & T the opportunity to provide wireless services in the area.

### III CONCLUSION

For the reasons set forth above, the Court holds in favor of Defendant on both causes of action.

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED.**

**SO ORDERED.**