**MIOP, INC., as agent for VoiceStream Wireless Corp. and other telecommunication companies, Plaintiff,**

v.

**CITY OF GRAND RAPIDS and Grand Rapids City Commission, Defendants.**

No. 1:01–CV–335.

United States District Court, W.D. Michigan, Southern Division.

Oct. 15, 2001.

Eric S. Richards, Mika, Meyers, Beckett & Jones, PLC, Grand Rapids, MI, for Miop Inc, as agent for VoiceStream Wireless Corp. and other telecommunication companies agent VoiceStream Wireless Corp., pltfs.

James L. Wernstrom, Law, Weathers & Richardson, Grand Rapids, MI, for Grand Rapids, City of, Grand Rapids City Commission, defts.

## OPINION

ROBERT HOLMES BELL, Chief Judge.

Before the Court are the Plaintiff MIOP, Inc.'s ("MIOP") and Defendants City of Grand Rapids and Grand Rapids City Commission's (collectively the "City") cross motions for summary judgment on Count I of Plaintiff's complaint and Defendants' motion to dismiss Counts II through VI. Plaintiff seeks to construct a 150 foot tower at 2340 Dean Lake Road for the provision of personal communication services ("PCS"). Defendants have denied Plaintiff a "Permitted With Approval Use" for the construction of the tower. For the following reasons, the Court GRANTS MIOP's motion and DENIES the City's motions.

## I.   Factual Background

MIOP is an agent for VoiceStream Wireless Corp. ("VoiceStream") and represents the interests of VoiceStream in this action. Although some of the earlier proceedings leading up to this case were between VoiceStream and the City, the Court refers to the party seeking to construct the tower as MIOP. Beginning in 1999, MIOP determined that there was an approximately 5-mile PCS coverage gap along I–96. This gap is significant because of the large number of PCS potential users who travel along this stretch of I–96. To close this gap, MIOP conducted propagation studies and examined possible antenna or tower locations, which would eliminate the gap in coverage. Possible sites were then analyzed to determine whether they would comply with local zoning ordinances. Significantly, local zoning ordinances require that any proposed antenna or tower structure be at least 500 feet away from any residences. GRAND RAPIDS. MICH., ZONING ORDINANCE § 5.40.4(1).

Combining all of these requirements, one of the few sites, which would both eliminate the gap in coverage and satisfy the zoning ordinance, was on the New Community Church's ("Church") property at 2340 Dean Lake Road. While this proposed location is in a residential neighborhood, it is at least 500 feet from any residence and less than a mile away from I–96, a major West Michigan expressway.[1] No governmental entities have chosen to regulate this land as either wilderness park, wetlands, or any other type of environmentally protected area.

In October 2000, MIOP filed an application with the City's Planning Commission ("Planning Commission") to construct a 150 foot tower on the Church's property.

After a hearing held by the Planning Commission, the tower location was moved several hundred feet to accommodate the Planning Commission's concerns. The Planning Commission approved the new location of the tower on January 11, 2001. The decision was appealed to the City Commission, which held public hearings on the issue, received correspondence from neighbors near the proposed site, and hired an independent consultant to study the issue. Notably, the City's independent consultant's study "reveal[ed] an area with weak, or poor coverage depending [on] the type of carrier and technology deployed, in the area of the proposed site." (Def.'s Ex. 10 at 2). This study by the City's independent consultant also indicated that alternative sites were not viable. (Def.'s Ex. 10 at 2) Finally, the City's consultant concluded that "given these factors and having to deal with the locations of existing infrastructure, this area will need some sort of antenna support structure." (Def.'s Ex. 10 at 3).

The neighbors were vehemently opposed to the construction of the tower for aesthetic reasons, for fear of diminishing property values, and for concerns over damage to the natural environment. Based primarily on the neighbors' opposition, the City decided to deny MIOP the necessary permit. The City's resolution denying the permit to construct the tower stated:

1.  That the Permitted With Approval use will be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes permitted because the character of this rural, residential area will be spoiled by the appearance of the cell tower in the skyline.

---

1.  The Court notes that 32,100 vehicles a day traverse this stretch of I–96. TRAVEL INFO. UNIT, BUREAU OF TRANSP, PLANNING, MICH. DEP'T OF TRANSP., MICHIGAN 2000 ANNUAL AVERAGE 24– HOUR TRAFFIC VOLUMES

2. That the proposed use will substantially diminish or impair property values within the residential neighborhood because of its unsightly nature and intrusion into the skyline.

3. That the proposed use will diminish or impair the value of the natural environment because it will put an unnatural structure into a natural environment.

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). An issue concerning a material fact is genuine if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Under Rule 56, the court must view the evidence in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is proper if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to the party's case for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Analysis

The Telecommunications Act of 1996 ("TCA" or "Act") "provide[s] for a procompetitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." S. REP. NO. 104–230, at 1 (1996). The Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (2001). Count I of Plaintiff's complaint alleges that Defendants have violated the TCA by not providing substantial evidence to support its denial of a "Permitted With Approval Use."

### A. Meaning of Substantial Evidence

Other district courts dealing with similar cases have found two trends in the applicable definition of "substantial evidence." *New Par v. City of Saginaw*, 161 F.Supp.2d 759 (E.D.Mich.2001) (citing *PrimeCo Pers. Communications, L.P. v. Vill. of Fox Lake*, 26 F.Supp.2d 1052, 1059–61 (N.D.Ill.1998)). These two trends are the "substantial deference trend" and the "rigorous review trend." *Id.* at 765. The "substantial deference trend" has been primarily adopted by the Fourth Circuit. *Id.* Despite the Fourth Circuit's arguments, the Sixth Circuit continues to apply a more "rigorous review." *Id.* at 765.

Consistent with "rigorous review," the Sixth Circuit recently defined substantial evidence as " 'such relevant evidence as a reasonable mind might accept as adequate to support the conclusion.' " *Telespectrum v. Public Service Comm'n of Ky.*, 227 F.3d 414, 423 (6th Cir.2000) (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir.1999)). When determining whether a decision was based on substantial evidence, the Court is required to consider all the evidence and to

examine whether the decision maker "gave reasons for crediting one piece of evidence over another." *Telespectrum*, 227 F.3d at 423.

### B. Satisfying the Zoning Ordinance

■ MIOP has the initial burden of showing that the record supports a variance. *New Par*, 161 F.Supp.2d at 765. Although supporting the general proposition, the *New Par* court did not hold the plaintiff to a very heavy burden in proving the negative. *Id.* at 761. For example, the court did not require the plaintiff to present any evidence showing that the structure would "not interfere with or discourage the appropriate development and use of adjacent land and buildings or unreasonably affect their value." *Id.* Similarly, this Court will not hold MIOP to the impossible standard of proving the negative.

Applying this burden to the facts here, MIOP has satisfied the Grand Rapids ordinance. In addition to a 500 foot set back from any residences, GRAND RAPIDS, MICH., ZONING ORDINANCE § 5.40.4(1), Grand Rapids' ordinance requires a showing that the variance "will not be injurious to the use and enjoyment of other property . . . . nor substantially diminish or impair property values within the neighborhood, or the value of the natural environment." GRAND RAPIDS, MICH., ZONING ORDINANCE § 5.33(2). MIOP has offered evidence to address each of these concerns. A number of photographs demonstrate the aesthetic effect on other nearby property. (Pl.'s Br. Supp. Exs. I. K). To address the impact on property values, MIOP presented a 1999 study, *The Impact of Communication Towers on Residential Property Values*,[2] which finds that this type of tower did not diminish property values. MIOP also commissioned a study from the Blandford Appraisal Company. (Pl.'s Br. Supp. Ex. 1K). The Blandford appraisal stated that "[i]t is the conclusion of the appraiser, after reviewing the above studies, that in general, cellular towers would not affect negatively the property values in proximity to the towers." (Pl.'s Br. Supp. Ex. 1K at 4). Through this evidence, MIOP has satisfied its burden of showing that it is entitled to the variance. Consequently, the real issue is whether the City has offered substantial evidence to support its decision.

### C. Lay Opinion Evidence

■ There is disagreement among the circuit and district courts as to whether lay opinion evidence may satisfy the substantial evidence requirement. *Compare Telespectrum*, 227 F.3d at 424 (finding that neighbors' testimony "was no more than unsupported opinion"), *and Iowa Wireless Servs., L.P. v. City of Moline*, 29 F.Supp.2d 915, 922 (C.D.Ill.1998) ("It would completely frustrate the purpose of the statute if the voicing of negative opinions by a small number of citizens, without more, could serve as a basis for denial."), *with Southwestern Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 61 (1st Cir.2001) (permitting aesthetic judgment "without justifying that judgment by reference to an economic or other quantifiable impact"). The Fourth Circuit has found that opinion testimony is sufficient. *AT & T Wireless P.C.S. v. City Council of Virginia Beach*, 155 F.3d 423, 430–31 (4th Cir.1998). Notably, the Sixth Circuit in *Telespectrum* did not cite these Fourth Circuit cases. *Telespectrum*, 227 F.3d at 424. Instead, the cases cited by the Sixth Circuit remark that opinion is not sufficient to meet the substantial evidence requirement. *Id.* Consistent with Sixth Circuit precedent,

---

2. Allen G. Dorin, Jr. and Joseph W. Smith, III, *The Impact of Communication Towers on Residential Property Values*, RIGHT OF WAY Mar.-Apr.1999. (Pl.'s Br. Ex. 13).

this Court does not find lay opinion evidence sufficient to satisfy the substantial evidence requirement.

D. The City's Evidence

■ As noted in the facts, the City provided three reasons for denying the permit. First, the City feels that the tower would interfere with the use and enjoyment of other nearby property. Second, the City claims that the tower will diminish or impair property values within the residential neighborhood. Finally, the City alleges that the tower will diminish or impair the value of the natural environment. Although the Court is required to look at all of the evidence, *Telespectrum,* 227 F.3d at 423, in this case, it is not necessary because the City presents no evidence sufficient to justify the denial.

1. Injurious to Use and Enjoyment of Other Nearby Property

The only evidence offered by the City to support its first reason for denying the permit is the neighbor's statements and photographs. (Def.'s Br. Resp. Opp'n at 13–15). One neighbor describes the tower as "half the height of the Amway Grand Plaza Hotel in a virtually treeless location with nothing to hide its negative impact from all vistas." (Def.'s Ex. 9). Another neighbor similarly says that "[t]he pole is very visible and will be very obnoxious and will not fit in with the setting whatsoever." (Def.'s Ex. 2 at 24). Several letters from neighbors echo these sentiments and strongly urge finding another site with less of a residential character. The neighbors also superimposed a tower structure on a number of current photographs. (Def.'s Ex. 11). The City's hired consultant "understand[s] the concern of the visual impact on the community." (Def.'s Ex. 10 at 3). Although the Court has viewed this evidence, it is lay opinion evidence, which alone is not substantial enough to satisfy the requirements of the TCA.

2. Diminish or Impair Property Values Within the Residential Neighborhood

The City's evidence concerning the effect of the tower on property values is primarily, like the evidence on aesthetics, opinions of the neighbors and anecdotal evidence of the neighbors. The City does offer a reference by a neighbor at a Planning Commission meeting to a 1983 Wall Street Journal article citing a Houston study concerning property values near electric transmission lines. (Def.'s Ex. 1 at 9). The study's relevance is highly questionable given the remoteness in time and location and the different type of structure studied, electric transmission lines. More importantly, the study does not appear to have been considered by the City Commissioners as nothing in the minutes from the City Commission meeting when the decision was made to deny the variance mentions this study. (Def.'s Ex. 16). The only reference pointed to by the City in the entire record is a January Planning Commission meeting and not at any City Commission meeting. (Def.'s Ex. 1 at 9). Because the City did not consider the study it cites and the study is significantly remote in time, location, and type of structure, the Court disregards the study as evidence. Consequently, the City has offered only lay opinion evidence to support its claim that the tower will diminish or impair property values, and as with the evidence on aesthetics, lay opinion evidence is insufficient under the TCA.

3. Diminish or Impair the Value of the Natural Environment

Finally, the only evidence concerning the effect on the natural environment is a few comments from a member of the Planning Commission and a couple of neighbors. Planning Commissioner Dan Gravelyn described the neighborhood as a "rural

hamlet [with] a nice lake in a rural setting, natural environment and peace and enjoyment." (Def.'s Ex. 14 at 25). A neighbor reports that the community has purposely spent money to ensure that utilities are underground and that there are no power poles "disturb[ing] the natural surroundings." (Def.'s Ex. 3 at 35). Finally, another neighbor testified that the tower would sit in the middle of the flight path of migratory birds and that the tower was very near where herons have been nesting for several years. (Def.'s Ex. 2 at 22–23). As none of these comments were made by individuals with experience or expertise in birds or natural environments, the Court considers them lay testimony and not sufficient to satisfy the substantial evidence requirement.

E. Relief

MIOP requests an order requiring the City to issue the necessary permit. (Pl.'s Br. Supp. at 25). Because MIOP titles this remedy "mandamus," the City argues that the order must comply with 28 U.S .C. § 1361 (2001). Section 1361 applies to orders to federal officers, and nothing indicates that this section is applicable to this action. Moreover, a number of other courts have found that an injunctive remedy is appropriate for a substantial evidence violation. *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 497 (2d Cir. 1999) (collecting cases). *See also New Par,* 161 F.Supp.2d at 765 (analyzing appropriateness of an injunction requiring the city to issue the necessary permits). Therefore, this Court finds this remedy is appropriate in this case.

IV. Conclusion

The Court is not unsympathetic with the neighbors' high value on aesthetics and the natural environment. Moreover, the Court understands the resulting diminution in aesthetics caused by a skyline obstruction like the proposed tower. The proposed location, however, is one of the few which would eliminate the present gap in PCS coverage and satisfy the local zoning ordinance requirements. Moreover, the record in this case lacks any specific evidence to support the Defendants' denial of the necessary permit. For the foregoing reasons, Plaintiff's motion for summary judgment on Count I is GRANTED and Defendants' motion for summary judgment on Count I is DENIED. Because Plaintiff is obtaining all the relief it seeks. Defendants' motion to dismiss Count II through Count VI is DENIED as moot without addressing the merits. Furthermore, Plaintiff's request for an injunction permitting it to construct the tower is GRANTED. An order and judgment consistent with this opinion will be entered.

*ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (Docket # 6) on Count I of Plaintiff's complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket # 10) on Count I of Plaintiff's complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss (Docket # 11) Count II through Count VI of Plaintiff's complaint is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff may construct the proposed tower at 2340 Dean Lake Road without interference from Defendants.

**IT IS FURTHER ORDERED** that JUDGMENT is entered in favor of Plaintiff.